IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMPREHENSIVE HEALTHCARE ) <br> MANAGEMENT SERVICES, LLC, d/b/a ) <br> BRIGHTON REHABILITATION AND ) <br> WELLNESS CENTER, f/d/b/a ) <br> FRIENDSHIP RIDGE, ) <br> Plaintiff, ) <br> ) <br> vs ) <br> ) <br> SEIU HEALTHCARE PENNSYLVANIA, ) <br> CTW, CLC, ) <br> Defendant. ) | Civil Action No. 16-358 <br> Judge Hornak <br> Magistrate Judge Mitchell |

I. Recommendation

It is respectfully recommended that the Motion for Summary Judgment filed by Plaintiff Comprehensive Healthcare Management Services, LLC (ECF No. 20) be denied. It is further recommended that the motion for summary judgment filed by Defendant SEIU Healthcare Pennsylvania, CTW, CLC (ECF No. 24) be granted.

II. Report

Currently before the Court are cross-motions for summary judgment in an action arising out of an arbitration award in a labor dispute. Plaintiff, Comprehensive Healthcare Management Services, LLC d/b/a Brighton Rehabilitation and Wellness Center, f/d/b/a Friendship Ridge ("Brighton"), an employer, brings this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (LMRA), seeking to vacate the arbitration award entered in favor of the defendant union, SEIU Healthcare Pennsylvania, CTW, CLC ("SEIU"). The award directed Brighton to comply with its predecessor's past practice of allowing employees at Brighton's skilled nursing facility to bid job openings by specific floors and hallways of the facility. Defendant seeks to have the arbitrator's award enforced. For the reasons that follow,

Plaintiff's motion should be denied and Defendant's motion should be granted.

Facts

Brighton is a skilled nursing facility operating at 246 Friendship Circle, City of Beaver, Beaver County, Pennsylvania 15009. Brighton provides skilled nursing care services which are regulated by the Commonwealth of Pennsylvania Department of Human Services. (Compl. ¶ 2; Answer ¶ 2.)[1]

SEIU (the "Union") represents a bargaining unit of employees at the Brighton facility (Compl. ¶ 3; Answer ¶ 3.) The Union and Brighton are signatories to a collective bargaining Agreement ("CBA") (the "Brighton/SEIU CBA"), which commenced on March 1, 2014 and which terminates on March 1, 2017. (Pl.'s App. Ex. B; Def.'s Errata App. 1.)[2]

Prior to Brighton owning and operating this facility, it was owned and operated by the County of Beaver for many years. The Union represented this same unit of employees pursuant to a CBA with the County (the "County/SEIU CBA"), which was effective October 18, 2010 through October 31, 2013. (ECF No. 22 App. C.) In November of 2013, in anticipation of the privatization of the facility, the County engaged Brighton to operate the facility under a management agreement for a period of about four months. Prior to the expiration of the Union's CBA with the County, the Union and Brighton entered into the Brighton/SEIU CBA, which became effective on March 1, 2014.

The CBAs – both the predecessor one with the County of Beaver and newly negotiated one with Brighton – required Brighton to post job vacancies so that members of the bargaining unit could elect to seek the posted position. Soon after becoming the owner and operator of the facility in March 2014, Brighton began to post bids for permanent vacancies (jobs) by shift and

---

[1] ECF No. 1; ECF No. 5.
[2] ECF No. 22; ECF No. 27.

job title, but did not include the specific floors or hallway where the opening existed. These bid postings did not enable the employee to know where the job for which s/he was entitled to bid was located.

At all times prior to March 1, 2014, while the County operated the facility and during the time that Brighton managed the facility under the management agreement and pursuant to the County/SEIU CBA, all vacancy bids included the location, i.e., hallway or unit, for the open position which gave the bidding employee the location of the position for which s/he could bid on. (Id.) Brighton contends that the new Brighton/SEIU CBA disclaimed all prior practices and therefore it was not required to post position openings by floor and hallway, but only by job title and shift, and that the CBA provides Brighton with the authority to direct where its employees perform their work duties during their shifts.

On May 23, 2015, the Union filed a class action grievance challenging Brighton's manner of posting of bids because they did not have the location of the bid on them. The Union contended that this practice violated numerous provisions of the Brighton/SEIU CBA, including Article 5, which governed various aspects of employee seniority (Id.)

On May 28, 2015, Brighton denied the grievance stating that its practice was allowed by the management rights provision of the CBA. (Id.) Having not been able to resolve the grievance, the matter proceeded to arbitration on November 30, 2015. (Id.)

The Arbitrator, David Breen, issued his award on February 29, 2016. (ECF No. 22 Ex. A.) The award sustained the grievance and ordered Brighton to "promptly begin filling permanent vacancies again by including the location on bid forms used during the bidding process." (Id. at 11.)

The relevant provisions of the Brighton/SEIU CBA which the Arbitrator reviewed and

analyzed in light of the facts presented were as follows:

> 3.2 The Employer and the Union further agree that the provisions of this Agreement shall be expressly limited to wages, hours and working conditions of employees, and no provisions shall be construed to restrain the Employer from the management of its operations.
>
> 3.3 The Employer shall have all the rights afforded it by this Agreement and except as limited by a specific provision of this Agreement, the Employer shall continue to have the exclusive right to take any action it deems appropriate in the management of the employees and direction of the work force in accordance with its judgement. All inherent and common law management functions and prerogatives which the Employer has not modified or restricted by a specific provision of the Agreement are retained and vested exclusively in the Employer.
>
> 3.4 Included in such rights, but not limited thereto, are the right to determine the size and composition of the work force, the right to determine medical and patient care standards and methods; the staffing pattern or patterns; the areas to be worked; the quantity and type of equipment to be used, the operation of such equipment, the manning requirements and speed of such equipment on any job; to determine the time for work, the work to be performed, the method and place of performing work, including the right to determine that the Employer's workforce shall not perform certain work, the schedules of work and of work breaks; to fix, alter, modify or change standards of quality and/or quantity of work to be done; to determine whether any part or the whole of its operations shall continue to operate; to alter, combine, or abolish any job classification or service; to maintain order and efficiency; to determine the duties of employees; to discharge probationary employees for any reason whatsoever, to hire, to discharge probationary employees for any reason whatsoever, to hire, to lay off, to assign, to transfer, to demote, to discharge employees for just cause, to determine the qualification of employees; to promote employees; to determine the starting and quitting time, overtime, and the number of hours to be worked; the right to manage the properties and affairs of the Employer; the right to determine the number of employees it shall employ in any classification at any time; the right to introduce new, improved or different methods of facilities or to change existing methods or facilities in the interest of proper service to its patients and conduct of properly maintaining the operation of the Employer; close down the Employer or any part thereof or expand, reduce, alter, combine, transfer, assign, or cease any job departmental section or nursing unit, operation, or service; the right to introduce new equipment, machinery or processes; the right to determine the number, location and operation of the Employer and its departments; the right to determine the qualifications, training experience, and technical knowledge necessary for the filling of any job and to judge employees conformity thereto by testing or such methods as the Employer shall deem proper on a nondiscriminatory basis; the right to reduce the employee work force and recall employees to work; and the Employer also retains all other rights and prerogatives

including those exercised unilaterally in the past, subject only to such regulations and restrictions governing in exercise of these rights as are expressly provided in this Agreement.

. . .

3.6 The Employer by not exercising any function hereby reserved to it, or by exercising any such function in a particular way, shall not be deemed as waiver of its right to exercise such function or preclude the Employer from exercising the same in some other way not in conflict with the express provisions of the Agreement.

. . .

5.3 Promotions

a. When the Facility determines to fill a permanent vacancy, it shall post notice of that permanent vacancy upon the appropriate bulletin boards and provide a copy of the notice to the Union.

b. This notice shall be dated and any employee desiring to be considered for the promotion shall file a job vacancy bid form within seven (7) calendar days (including the day such notice was posted). A copy of the notice will be provided to the Chapter Officer.

c. The Facility shall consider the bids and award the vacancy to the employee with the most bargaining unit seniority, if he or she meets the qualifications and demonstrates a capability of performing the duties of the position based upon ability, physical fitness, attendance and prior work performance. The determination of the qualifications or capability of any employee shall, in the first instance, rest with the Facility, subject however, to the grievance procedure. A thirty (30) day trial period will normally be provided to any employee. The employee will also be permitted, during the initial thirty (30) day trial period, to voluntarily return to his or her former job. In the event no union employee bids the position the Facility may fill the position with any person.

The Union shall be advised of the final disposition of the bids.

1) In the event an employee bids a vacancy within the same job title, there shall be no thirty (30) day trial period and the employee will be precluded from bidding another position within the same job title for a period of three (3) months.

2) In the event an employee bids a vacancy to a different job title, the employee will only be precluded from bidding during the applicable trial period.

d. Vacancies will be awarded by the following preferences and by seniority within

each preference.

1) First, full-time employees and part-time employees with at least two (2) years of service.

2) Second, part-time employees with less than two (2) years of service.

. . .

Side letter: The parties agree to eliminate all past practices that existed at Friendship Ridge prior to the employer's takeover of operations.

(Award at 4-6.)[3]

Procedural History

Plaintiff filed this action on March 29, 2016 (ECF No. 1). Federal question jurisdiction is based on the LMRA and, as noted above, Plaintiff seeks to have the award vacated. On September 16, 2016, the parties filed cross-motions for summary judgment (ECF Nos. 20, 24). On September 30, 2016, they filed respective briefs in opposition (ECF Nos. 30, 31).

Summary Judgment Standard of Review

As amended effective December 1, 2010, the Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual

---

[3] Brighton changed its name from Friendship Ridge to Brighton after entering into the Brighton/SEIU CBA.

record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Judicial Review of Arbitration Awards

As the Supreme Court has repeatedly held:

> Judicial review of a labor-arbitration decision pursuant to such a [collective bargaining] agreement is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. [United] Paperworkers [Int'l Union] v. Misco, Inc., 484 U.S. 29, 36 (1987). We recently reiterated that if an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting Misco, supra, at 38, 108 S.Ct. 364). It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispense[s] his own brand of industrial justice" that his decision may be unenforceable. Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award. Misco, 484 U.S., at 39, 108 S.Ct. 364.

Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001). See also Oxford Health Plans LLC v. Sutter, 133 S.Ct. 2064, 2068 (2013) (reiterating that: "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.")

7

Plaintiff argues that: 1) the arbitrator's award does not draw its essence from the Brighton/SEIU CBA; 2) the award is not supported by principles of contract construction; and 3) the arbitrator exceeded his authority under the CBA. Defendant responds that Plaintiff has pointed to no exceptions to the general principle that arbitration awards should not be lightly disturbed.

Brighton argued in the arbitration that the Side Letter cited above, with its statement that the parties agreed to "eliminate all past practices," thereby eliminated the long-standing past practice of employees bidding for permanent vacancies in specific locations. In addition, Brighton contended that the Brighton/SEIU CBA provided that it had the absolute right to bid permanent vacancies without regard to any designated unit or location.

The arbitrator rejected this argument, however, because he concluded that the practice at issue dealt with the undefined meaning of the term "permanent vacancy" in Article 5.3 and that it was appropriate for him to refer to the parties' prior custom or practice to help resolve this ambiguity. He stated that:

> For sure, many years ago the parties decided to use the term vacancy in the Promotions Clause. What they meant at that time is not clear from the word itself. That meaning, however, became apparent when a bidding procedure was implemented with bid forms and notices which designated the job, the shift and the location of the vacancy. It was decided that the vacancy was on a job in a specific location on certain shifts. That's how the bidding procedure was constructed. If it was a nurse working in a location housing the male only unit or the female only unit or the locked down unit or some other unit it was decided that the vacancy occurred at that location which contained specific known units. Since a vacancy in a specific location was being filled, that location was included on the forms used in the bidding process.
>
> Whether that practice was unilaterally implemented by management or negotiated with the Union is not known. It is clear, however, that regardless of how the practice started it was the mutually accepted interpretation of what constitutes a permanent vacancy. The Side Letter negotiated by the parties' [sic] to this Agreement eliminates past practices. It does not, however, eliminate the use of that practice to determine the mutual intent of the parties when they used

8

> the term permanent vacancy in the Promotions Clause. That interpretation carried over from the Predecessor Agreement to this Agreement. Although the parties discussed the Promotions Clause during the negotiations which led to the existing Agreement, the only change during the negotiations was the deletion in Section 5.3c. of the word minimum in the sentence which now reads: "... if he or she meets the (minimum is deleted) qualifications ..."

(ECF No. 22 Ex. A at 8-9.) The arbitrator further concluded that, read as a whole, the Promotions Clause required the location of the open position so as comply with other sections of the provision and that the term "permanent vacancy" is rendered meaningless unless the location is included:

> Using the Employer's revised bid forms the bidding employee would only know the job and the shift. That employee would not know if the job was located in a lock down unit or psychiatric unit or some other unit which they may or may not desire or which they may or may not be qualified to perform. Also, the Union stresses that shift means, in labor contract parlance, a set period of time. Permanent vacancies occur where the vacancy is located. It is not the shift that is being vacated. The vacancy is on a specific job in a specific location working on certain shifts. It is that job at that location on a specific shift or shifts that is vacant and needs to be filled.

(Id. at 9-10.) Lastly, the arbitrator addressed Brighton's argument that management is in the best position to understand resident needs and employee capabilities, stating that:

> the Promotions Clause does not take that management discretion away. Instead, that Clause gives management the express right in Section 5.3c. to make the determination that a bidding employee does not have the qualifications or capability of performing the specific job on the specific unit involved. That determination at all times remains with management.

(Id. at 10.)

Plaintiff argues that the arbitrator's award did not draw its essence from the CBA because it ignored the clear provisions of the Side Letter and Articles 3.2, 3.3 and 3.4 of the Brighton/SEIU CBA. Defendant responds that the arbitrator cited all of these provisions and carefully explained how the CBA did not define the term "permanent vacancy" and how the parties' prior practice could be referred to for purposes of resolving this ambiguity. Defendant is

9

correct: Plaintiff may not agree with the arbitrator's conclusions, but this does not mean that they were not drawn from the CBA.

Second, Plaintiff contends that the award is not supported by principles of contract construction. Specifically, it argues that the arbitrator erred in finding the term "permanent vacancy" ambiguous because the expanded Management Rights provision in the Brighton/SEIU CBA clearly indicated that Brighton was imbued with the right to direct and manage its workforce. Citgo Asphalt Ref'g Co. v. The Paper Allied-Industrial, Chemical & Energy Workers' Int'l Union, Local No. 2-991, 385 F.3d 809, 815-16 (3d Cir. 2004). Defendant notes that, in Citgo, the court found that the award actually amended and changed specific terms of the CBA and that the arbitrator had no authority to revoke discretion that the CBA vested in the employer as to the relationship between discipline and safety at a power plant. Here, by contrast, the award did not amend the CBA or change its terms, but rather resolved an ambiguity therein. Moreover, Defendant notes that Plaintiff cites to Pennsylvania cases regarding courts' construction of contract provisions, which are not relevant here. See Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604 (3d Cir. 1995) (court found no ambiguity between two very technical contractual provisions); Seven Springs Farm, Inc. v. Croker, 801 A.2d 1212 (Pa. 2002) (court had to resolve whether a corporate act was subject to the right of first refusal); Lang v. Meske, 850 A.2d 737, 740 (Pa. Super. 2004) (court held that a property settlement agreement was not clear as to the parties' intent and therefore the trial court properly admitted extrinsic evidence as to its meaning).

Defendant is correct: the arbitrator used principles of contract construction and the award is not subject to challenge on that ground. Finally, Plaintiff contends that the arbitrator exceeded his authority, under Article 10.4 of the CBA, "only to clarify and interpret the express terms,

provisions or clauses of this agreement, and shall not have the authority to enlarge, alter, modify, delete or change the express terms, provisions or clauses of this agreement." As explained above, the arbitrator was acting within the scope of his authority when he clarified the meaning of the term "permanent vacancy" by referring the parties' prior practice for guidance. Therefore, this argument is unavailing.

In summary, Plaintiff has failed to demonstrate that the award should be vacated. Therefore, it is recommended that the Motion for Summary Judgment filed by Plaintiff Comprehensive Healthcare Management Services, LLC (ECF No. 20) be denied. It is further recommended that the motion for summary judgment filed by Defendant SEIU Healthcare Pennsylvania, CTW, CLC (ECF No. 24) be granted.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by November 28, 2016. Any party opposing the objections shall file a response by December 12, 2016. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: November 10, 2016